# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| MERIDIAN IMAGING SOLUTIONS, INC., *et al.*, <br>    Plaintiffs, <br><br> v. <br><br> OMNI BUSINESS SOLUTIONS LLC, *et al.*, <br>    Defendants. | Case No. 1:17-cv-186 |

## MEMORANDUM OPINION

In this trade secrets and unfair competition case, defendant William Christopher Brumlow ("Brumlow") has moved to dismiss all claims against him pursuant to Rule 12(b)(3), Fed. R. Civ. P., or, in the alternative, to stay the proceedings against him and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 & 4. Although Brumlow did not sign the pertinent arbitration agreement, he nonetheless seeks to enforce that agreement against one of the signatories and its parent company.

For the reasons that follow, Brumlow's Rule 12(b)(3) motion must be denied, and his motion to compel arbitration and stay proceedings must be granted in part and denied in part.

## I.

It is unnecessary to delve into the facts to conclude that Brumlow's Rule 12(b)(3)[1] motion is a nonstarter. Brumlow incorrectly contends that "[a] motion to dismiss for improper venue concerning a forum-selection clause is properly brought under Fed. R. Civ. P. 12(b)(3)."

---

[1] Rule 12(b)(3), Fed. R. Civ. P., provides that a defendant may move to dismiss for "improper venue."

D. Mem. at 11.[2] The Supreme Court has recently and explicitly rejected this argument. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013) ("[Defendant] contends that a party may enforce a forum-selection clause by seeking dismissal of the suit under … Rule 12(b)(3). We disagree."). In *Atlantic Marine*, the Supreme Court held that "Rule 12(b)(3) [is] not [a] proper mechanism[] to enforce a forum-selection clause," *id.* at 580, because "a forum-selection clause does not render venue in a court … 'improper' within the meaning of … Rule 12(b)(3)," *id.* at 579.[3] Thus where, as here, a party seeks "to enforce a forum-selection clause pointing to a state or foreign forum," Rule 12(b)(3) has no application, and typically the "appropriate" procedure is to seek dismissal pursuant to "the residual doctrine of *forum non conveniens*[.]" *Id.* at 580. Put simply, Supreme Court precedent forecloses Brumlow's Rule 12(b)(3) motion, and thus the motion must be denied.

Because Brumlow has not argued *forum non conveniens* and the Complaint does not suggest any basis for such an argument, the following analysis is properly limited to Brumlow's motion to stay or compel arbitration, pursuant to the FAA, 9 U.S.C. §§ 3 & 4.[4]

---

[2] There is no doubt that an arbitration clause is a species of forum-selection clause. *See, e.g.*, *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause … .").

[3] Rather, as the Supreme Court in *Atlantic Marine* noted, the federal venue statute, 28 U.S.C. § 1391(b), governs whether venue is proper. 134 S. Ct. at 577. And "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Id.* Thus, "a case filed in a district that falls within § 1391 may not be dismissed under … Rule 12(b)(3)." *Id.* Here, there is no question that venue is proper in this district, because the Complaint properly alleges that "a substantial part of the events … giving rise to the claim occurred" in this district. *See* 28 U.S.C. § 1391(b)(2).

[4] At oral argument on Brumlow's motions, counsel for plaintiffs incorrectly indicated that the Court, *sua sponte*, raised the issue of compelling arbitration pursuant to the FAA. One need look no further than the bolded heading of Brumlow's motion to see that he moved in the alternative to compel arbitration and stay proceedings under the FAA. *See Meridian Imaging Solutions, Inc. v. Omni Bus. Solutions, Inc.*, No. 1:17-cv-186 (E.D. Va. Mar. 13, 2017) (Doc. 17) ("Motion

**II.**[5]

Plaintiffs in this action are Konica Minolta Business Solutions U.S.A., Inc. ("Konica") and its recently-acquired, wholly-owned subsidiary, Meridian Imaging Solutions, Inc. ("Meridian").

The six named defendants are:

- two LLCs, OMNI Business Solutions LLC and OMNI Business Systems LLC (collectively, "OMNI"),

- three former Meridian employees, Greg Conroy, Scott Westfall, and Ed Lovatt, and

- the movant, William Christopher Brumlow, an employee of a nonparty company, Ricoh Americas Corporation ("Ricoh"), which company is currently in arbitration against Meridian for claims arising out of the same nucleus of operative facts as is alleged in the Complaint.

The basis for subject matter jurisdiction is federal question and supplemental jurisdiction, pursuant to 28 U.S.C. §§ 1331 & 1367. Compl. ¶¶ 24-25. The Complaint alleges the following nine counts.

- Count I: Violation of the Federal Defense of Trade Secrets Act, 18 U.S.C. § 1832 *et seq*. (brought by both plaintiffs against all defendants);

- Count II: Unfair Competition under Maryland law (brought by both plaintiffs against all defendants);

- Count III: Tortious Interference (brought by only Meridian against Brumlow, the OMNI defendants, Conroy, and Westfall);

---

of Defendant William Christopher Brumlow, Jr. To Dismiss *and/or*, in the Alternative, *To Compel Arbitration and Stay Proceedings*" (emphases added)).

[5] In analyzing Brumlow's motion to compel arbitration pursuant to the FAA, it is appropriate—indeed necessary—to consider materials outside the pleadings. In this respect, it is well-settled that "[i]n deciding motions to compel [arbitration], courts apply a standard similar to that applicable for a motion for summary judgment." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quotation marks omitted); *see also Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004) ("[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment.").

- Count IV: Breach of the Duties of Confidential Relationship and Loyalty (brought by both plaintiffs against defendants Conroy, Westfall, and Lovatt);

- Count V: Conversion (brought by both plaintiffs against all defendants);

- Count VI: Unjust Enrichment (brought by both plaintiffs against all defendants);

- Count VII: Quantum Meruit (brought by both plaintiffs against all defendants);

- Count VIII: Violation of the Virginia Uniform Trade Secret Act (brought by both plaintiffs against all defendants); and

- Count IX: Civil Conspiracy—statutory and common law (brought by both plaintiffs against all defendants).

Distilled to its essence, the Complaint alleges that defendants stole plaintiffs' business information and customers. Specifically, the Complaint alleges, in pertinent part, the following.

- From the late 1990s to mid-March 2016, Meridian was an authorized dealer for Ricoh. Compl. ¶ 3.

- Meridian and Ricoh executed their most recent dealer agreement in 2007 (the "Ricoh Agreement").[6] Compl. Ex. 3.

- In mid-March 2016, Konica acquired Meridian. Compl. ¶ 4.

- On March 17, 2016, Ricoh terminated the Ricoh Agreement. *Id*. ¶ 74.

- Meridian and the OMNI defendants are competitors. They each provide office technology, hardware, software, IT services, and document management solutions to customers in Maryland, Virginia, and the District of Columbia. *Id*. ¶ 28.

- Defendants Conroy, Westfall, and Lovatt formerly worked together at Meridian, and they currently work together at OMNI Business Solutions to compete directly with Meridian. *Id*. ¶ 21.

- Brumlow, a major account consultant at Ricoh,[7] allegedly worked closely with Conroy, Westfall and Lovatt, both in their former capacities as Meridian employees and in their current roles as employees of OMNI. *Id*. ¶ 23.[8]

---

[6] As explained *infra*, the Ricoh Agreement includes an arbitration clause that binds (at minimum) Meridian and Ricoh. *See* Ricoh Agreement § 22. This fact, however, is absent from the Complaint. Although plaintiffs attached portions of the Ricoh Agreement to the Complaint, they omitted the arbitration clause. *See* Compl. Ex. 3.

- Between January and June 2016, Conroy, while still employed by Meridian, allegedly spoke with the President of OMNI Business Systems about forming an affiliate of OMNI Business Systems to compete directly with Meridian as an authorized Ricoh-brand dealer. *Id*. ¶ 42.

- Before his departure from Meridian in June 2016, Conroy used Meridian's computer systems to access Meridian's confidential files, including business intelligence and information classified as trade secrets. Conroy allegedly obtained these trade secrets for use as an OMNI employee. *Id*. ¶ 50.

- Similarly, Westfall allegedly misappropriated information from Meridian for eventual use as an OMNI employee. *See id*. ¶¶ 52-59. The same conduct is alleged against Lovatt. *See id*. ¶¶ 60-64.

- Defendants, including Brumlow, executed a "Knockout Plan," by which they attempted to "knock" Meridian out of the Washington, D.C. market by converting Meridian's major and strategic client accounts to OMNI. *Id*. ¶¶ 75-80, 82.

- Plaintiffs allege that Brumlow continues to work closely and regularly with Conroy, Westfall, and Lovatt in their present roles at OMNI Business Solutions in Virginia. *Id*. ¶ 23.

- On August 23, 2016, Brumlow allegedly sent an email containing information about Ricoh's "major accounts" to Conroy and Westfall. *Id*. ¶ 59.

- Brumlow purportedly transmitted Meridian's confidential information and trade secrets to Conroy, Westfall, and OMNI Business Solutions as part of Brumlow's plan to knock Meridian out of the market of Ricoh-brand dealers. *Id*. ¶¶ 87-91.

- Brumlow's actions were part of the alleged scheme to aid, abet, and assist OMNI, Conroy, and Westfall to target existing Meridian clients and accounts in order to drive business away from Meridian to OMNI. *Id*. ¶ 95.

- Brumlow is also accused of directly or indirectly helping Conroy, Westfall, Lovatt, and OMNI to target and sell products, services, and technology to Meridian clients and customers, causing Meridian to lose customers and revenue. *Id*. ¶ 103.

---

[7] *See, e.g.*, Brumlow Aff. at ¶¶ 2-6.

[8] Whereas the Complaint describes the other individual defendants in several factual paragraphs, the Complaint is oddly laconic in its description of Brumlow. The Complaint thus omits the fact that Brumlow works for Ricoh, a company that has a binding arbitration agreement with plaintiff Meridian and, as it happens, is currently in arbitration with Meridian concerning the same set of operative facts.

5

- Brumlow's actions also allegedly facilitated Ricoh's breach of the Ricoh Agreement's confidentiality clauses, thereby harming Meridian. *Id.* ¶¶ 132-141.

Although the Complaint omits details regarding Brumlow's employment with Ricoh—and makes no mention of the arbitration clause in the Ricoh Agreement—there is no question that Meridian and Ricoh are currently (and properly) in arbitration regarding Meridian's claims that Ricoh breached the Ricoh Agreement through Brumlow's conduct. In addition, Brumlow has submitted competent evidence that may be considered on his motion to compel arbitration or stay proceedings pursuant to the FAA.[9] Specifically, Brumlow's submitted evidence, which is unrefuted, demonstrates the following.

- Meridian is a Virginia corporation headquartered in Alexandria, Virginia whereas Ricoh is a Delaware corporation based in New Jersey. Ricoh Agreement at 1.

- Ricoh currently employs Brumlow as a Major Account Consultant – Dealer Division and has performed in that role for Ricoh since October 2016. He first began working at Ricoh on September 28, 2015 as a Major Account Sales Manager. *See, e.g.*, Brumlow Aff. at ¶¶ 2-3; *see also* Loder Supp. Decl. Ex. 1 (Letter from Counsel for Meridian to Ricoh) (representing Meridian's understanding that Brumlow is Major Accounts Sales Manager for Ricoh); Compl. Exs. 11-13 (emails sent by Brumlow from his Ricoh email address).[10]

- At the relevant time periods, Brumlow used the email address, Chris.Brumlow@ricoh-usa.com. His email signature block stated his position—Major Accounts Sales Manager—as well as contact information for Ricoh, including the company's address and website. *See* Compl. Exs. 11-13.

- Brumlow's job duties include supporting area Ricoh dealers and the efforts of those Ricoh dealers to sell and lease Ricoh products to customers, and to provide service and support to those customers. Brumlow Aff. at ¶ 5.

- The documents that plaintiffs allege Brumlow sent were transmitted by Brumlow from his Ricoh computer (provided to him by Ricoh) and used by Brumlow in conducting business on Ricoh's behalf. *Id.* ¶ 4; *see also* Compl. Exs. 11-13.

---

[9] *See supra* note 5.

[10] Plaintiffs have not cited any evidence to contradict Brumlow's claim that, at all times relevant to this litigation, Brumlow was employed by Ricoh and was acting within the scope of his employment at Ricoh.

- Those documents were sent in his capacity as a Major Account Sales Manager in August 2016. Brumlow Aff. ¶ 4.

The Ricoh Agreement includes the following provisions regarding choice of law and forum selection:

> 22. **General Provisions**.
>
>     (a) Choice of Law: Dispute Resolution.
>
>     (i) This Agreement shall be governed by, interpreted and enforced in accordance with the laws of the State of New Jersey without regard to its principles of conflicts of laws.
>
>     (ii) **Any claim or controversy between the parties, whether arising out of this Dealer Agreement or not, shall be resolved pursuant to the provisions of subparagraphs (ii) through (iv) hereof,** as applicable. Prior to resort to either of the dispute resolution mechanisms set forth in subparagraphs (iii) or (iv) below, the **parties shall first attempt, in good faith, to mediate any dispute** before a mediator selected by the party bringing the claim or, alternatively, before such mediator as the parties may jointly select. Within thirty (30) days of any request for mediation, representatives of Ricoh and Dealer shall attend the mediation in a good faith attempt to reach a mutually acceptable agreement as to the issues in dispute.
>
>     (iii) With the exception of any claim for the purchase price of Products sold by Ricoh to Dealer, **in the event the mediation is not successful** in resolving the claim or controversy in dispute to the satisfaction of the parties, **such claim or controversy shall be settled by binding arbitration** in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA") in effect at the time a demand for arbitration is made.

Ricoh Agreement § 22 (emphases added). In other words, the Ricoh Agreement (1) designates New Jersey as the source of governing law, (2) requires a good faith effort to mediate any claim or controversy (with exceptions not relevant here), and (3) provides for binding arbitration if mediation fails.

On February 14, 2017—one day before filing this lawsuit against Brumlow—Meridian invoked § 22 of the Ricoh Agreement, demanding that Brumlow's employer, Ricoh, mediate

7

claims Meridian may have "for breach of contract, breach of the implied covenant of good faith and fair dealing, unfair competition, and misappropriation of trade secrets and confidential information." *See* Loder Decl. Ex. B (Letter from Meridian to Ricoh dated February 14, 2017). Meridian and Ricoh are currently in arbitration, pursuant to the arbitration clause in the Ricoh Agreement. *See* Ricoh Agreement § 22(a)(iii).

Thereafter, Brumlow, pursuant to § 22 of the Ricoh Agreement, demanded that plaintiffs mediate their claims against him. *See* Loder Decl., Exhibit C. On March 8, 2017, Meridian rejected Brumlow's demand. *See id.* ¶ 6. Brumlow subsequently filed this motion to compel arbitration and stay proceedings pursuant to the FAA.

### III.

Although Brumlow's Rule 12(b)(3) motion was dead on arrival, *see Atl. Marine*, 134 S. Ct. 568, his alternative motion to stay and compel arbitration pursuant to the FAA fares better.

To begin with, § 2 of FAA provides,

> A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.[11] The FAA further requires a stay of proceedings if any issue here is subject to the parties' arbitration agreement:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court … upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement … .

---

[11] Section 1 of the FAA defines "commerce" as including "commerce among the States." 9 U.S.C. § 1.

8

*Id.* § 3 (emphasis added). Finally, if "the court [is] satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," then "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4.[12]

To compel arbitration under the FAA, Brumlow must also satisfy the following four elements:

> (1) the existence of a dispute between the parties,
>
> (2) a written agreement that includes an arbitration provision [that] purports to cover the dispute,
>
> (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and
>
> (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002).[13] In other words, once it is determined that the contract containing the arbitration agreement falls under the FAA, "arbitration may be judicially compelled [only] when the parties have agreed to it, and then only for those kinds of disputes that the parties have agreed to submit to arbitration *Zandford v. Prudential-Bache Sec., Inc.*, 112 F.3d 723, 726 (4th Cir. 1997). Finally, the applicable legal standard is similar to that applied at summary judgment. Specifically, the pleadings and "all relevant, admissible evidence submitted by the parties" are considered and "all reasonable

---

[12] If, however, the making of the arbitration agreement or refusal to arbitrate is in issue, then a trial on that issue must be held. 9 U.S.C. § 4.

[13] *See also Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001) (in evaluating a motion to compel arbitration, "the court must … find that an arbitration agreement exists between the parties," and "[i]f an agreement … exist[s], the court must then decide whether the dispute at issue falls within the scope of the agreement").

inferences" are drawn in favor of the non-moving party. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quotation marks omitted).

## IV.

These principles, applied here, disclose that Meridian must be compelled to arbitrate its claims against Brumlow and that Konica's claims against Brumlow must be stayed pending that arbitration. *See* 9 U.S.C. § 3.

Here, three of the *Adkins* prongs are unquestionably satisfied. *See* 303 F.3d at 500-01. There is no question that a dispute exists between the parties and that there is an interstate nexus.[14] Similarly, it is undisputed that plaintiffs have declined to mediate or arbitrate against Brumlow. And as for the arbitration clause's scope, it is clear that the clause is quite broad: it purports to cover "[a]ny claim or controversy between the parties, whether arising out of this … Agreement or not[.]" Ricoh Agreement § 22(a)(i). Thus, it is apparent that the arbitration clause covers the claims raised in the Complaint.

The only remaining issue, then, is whether the arbitration agreement covers both Brumlow and Konica. More particularly, the questions presented are: (1) whether Brumlow, a nonsignatory to the arbitration clause, can compel Meridian, a signatory to that agreement, to arbitrate Meridian's claims against him; and (2) whether Brumlow, a nonsignatory to the arbitration clause, may compel arbitration against another nonsignatory, Konica.

---

[14] The Fourth Circuit has held that a contract between a Delaware corporation and a Virginia corporation establishes a sufficient interstate nexus to satisfy the FAA. *See Am. Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 963 (4th Cir. 1980). Because the Ricoh Agreement involves Delaware and Virginia corporations (Ricoh and Meridian, respectively) headquartered in diverse states, the arbitration agreement satisfies the FAA's interstate nexus prong. *See* Ricoh Agreement at 1 (identifying the parties' diversity of citizenship).

## A.

To determine whether Brumlow may avail himself of the Ricoh Agreement's arbitration clause, it is first necessary to identify the correct source of law governing the construction of the arbitration clause. The parties have offered New Jersey, Virginia, and federal common law as options. It appears that federal law is the correct source. As the Fourth Circuit has observed, "Federal law governs the construction of contract language concerning arbitrability." *Smith Barney, Inc. v. Critical Health Sys. of N.C., Inc.*, 212 F.3d 858, 860 (4th Cir. 2000). According to the Fourth Circuit, this approach is sound because the Supreme Court has instructed lower courts to "'apply ordinary state law principles that govern the formation of contracts' … and the 'federal substantive law of arbitrability.'" *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). In this regard, state law governs "questions concerning the validity, revocability, or enforceability of contracts generally," whereas the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Id.* (quotation marks and citations omitted). The Fourth Circuit has therefore concluded that "the determination of whether … a nonsignatory, is bound by [an arbitration clause] presents no state law question of contract formation or validity"; instead, the "federal substantive law of arbitrability" must be used "to resolve this question." *Id.* This is so despite the Ricoh Agreement's choice-of-law provision designating New Jersey law. *See* Ricoh Agreement § 22(a)(1). As the Fourth Circuit noted in *Smith Barney*, although state "decisional law governs the substantive principles of any dispute, federal law still governs the interpretation of the arbitration agreement." 212 F.3d at 861 n.1.

Notwithstanding this analysis, it is important to note that the Supreme Court's decision in *Arthur Andersen LLP v. Carlisle* may cast some doubt on the Fourth Circuit's approach described here. *See* 556 U.S. 624 (2009). To be sure, the Supreme Court in *Carlisle* reaffirmed that "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract[.]" *Id.* at 631. But the *Carlisle* majority went on to observe that appellate courts have jurisdiction to review an order denying a stay under the FAA "if the *relevant* state contract law allows [a litigant] to enforce the [arbitration] agreement." *Id.* at 632 (emphasis added). Notably, this reference to "the relevant state contract law" could be read as requiring courts to consult a particular state's substantive law, not federal common law, to determine whether a nonsignatory may enforce an arbitration clause. *See id.*; *see also Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 12-13 & n.26 (1st Cir. 2014) (observing this same potential conflict but nevertheless "view[ing] *Carlisle* as simply following the general proposition that in deciding whether an agreement to arbitrate is to be enforced, [courts] normally apply ordinary state-law principles that govern the formation of contracts, including validity, revocability, and enforceability of contracts" (quotation marks omitted)). In any event, for purposes of resolving Brumlow's motion, this puzzle is strictly academic, because the relevant state law—New Jersey law—dictates the same result as that required by federal law in the Fourth Circuit.[15]

---

[15] Of course, because the Ricoh Agreement contains a choice-of-law clause designating New Jersey, that state's law governs the contract. *See* Ricoh Agreement § 22(a)(i) ("This Agreement shall be governed by, interpreted and enforced in accordance with the laws of the State of New Jersey[.]"). This is so because plaintiffs' Complaint invokes supplemental jurisdiction over their state law claims, *see* Compl. ¶ 25, which triggers Virginia's choice-of-law rules, *see ITCO Corp. v. Michelin Tire Corp., Commercial Div.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983) ("Federal courts, when exercising their diversity or pendent jurisdiction over state law claims, must … apply the choice of law rules applicable in the forum state." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). And Virginia's choice-of-law rules provide that where, as here, "a contract specifies that the substantive law of another jurisdiction governs its interpretation or application," then the contracting parties' "choice of substantive law should be applied."

To begin with, there is no doubt that both New Jersey law and federal law in the Fourth Circuit emphatically favor arbitration. *See Zandford*, 112 F.3d at 726 ("[F]ederal policy strongly favor[s] arbitration[.]"); *Jansen v. Saloman Smith Barney, Inc.*, 776 A.2d 816, 819 (N.J. Sup. Ct. App. Div. 2001) (noting New Jersey's "well settled public policy favoring arbitration"). Both New Jersey and federal law instruct courts to resolve doubts in favor of arbitrability.[16]

Given this, it is "well-established" in the Fourth Circuit that "in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Int'l Paper*, 206 F.3d at 416-17. In New Jersey, too, "non-signatories of a contract ... may ... be subject to arbitration if the nonparty is an agent of a party or a third party beneficiary to the contract." *Jansen*, 776 A.2d at 820 (quotation marks omitted); *see also Mut. Benefit Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853 (D.N.J. 1992) (same), *aff'd*, 970 F.2d 899 (3d Cir. 1992). Brumlow may therefore enforce the arbitration clause in the Ricoh Agreement by invoking traditional principles of contract and agency law. *See, e.g.*, *Long v. Silver*, 248 F.3d

---

*Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76, 81 (2007); *see also Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) ("Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances."). Because there is no evidence in this record suggesting that choice-of-law clause in the Ricoh Agreement—a contract signed by two sophisticated business entities—should not be enforced, the choice-of-law clause designating New Jersey is valid.

[16] *See Zandford*, 112 F.3d at 727 ("Motions to compel arbitration under an arbitration clause should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (quotation marks omitted)); *Jansen* 776 A.2d at 818-19 (observing that New Jersey law requires that "[a]n agreement relating to arbitration … be read liberally to find arbitrability if reasonably possible," and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

In this respect, the Supreme Court has instructed that "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985). In short, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989).

13

309, 320 (4th Cir. 2001) ("A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract."); *Jansen*, 776 A.2d at 820 (noting with approval that "non-signatories have been bound by arbitration agreements through ordinary contract and agency principles"). Furthermore, it is blackletter law that "[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F. 3d 1110, 1121 (3d Cir. 1993); *see also Alfano v. BDO Seidman, LLP*, 925 A.2d 22, 27 (N.J. Super. Ct. App. Div. 2007) (holding that a nonsignatory could compel arbitration against the plaintiff because holding otherwise would "permit[] [the plaintiff] to avoid the practical consequences of his agreement to arbitrate"). This sensible rule—that a corporation's agents or employees may in some instances invoke the company's arbitration clause—is widely recognized. *See Grand Wireless*, 748 F.3d at 11 ("[A] number of our sister circuits have addressed this issue, and all have held that an agent is entitled to the protection of her principal's arbitration clause when the claims against her are based on her conduct as an agent." (collecting cases)).[17] Accordingly, the result reached here would be the same under either New Jersey or federal common law.

---

[17] *See also Grand Wireless*, 748 F.3d at 11 (collecting policy rationales for permitting nonsignatories to enforce and be bound by arbitration clauses).
    In the words of the Third Circuit, the rule elucidated here "is consistent with the concept that corporations can act only through agents and employees." *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 225 (3d Cir. 2007) (citing *In re Mulco Prods., Inc.*, 123 A.2d 95, 103 (Del. Sup. Ct. 1956) ("It is axiomatic that a corporation by structural necessity must act, if it acts at all, through its agents."), *aff'd sub nom. Mulco Prods., Inc. v. Black*, 127 A.2d 851 (Del. 1956)). This approach also prevents a clever party from side-stepping its promise to arbitrate: "If [courts] did not allow nonsignatory agents of a signatory corporation to invoke a valid [arbitration clause], such an agreement would be of little practical value, as it would be too easy to circumvent the agreements by naming individuals as defendants instead of the entity itself." *Id.* (citations and quotation marks omitted); *see also Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990) ("[I]f appellant can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint ... the effect of the rule requiring arbitration would, in effect, be nullified.").

## B.

These principles, applied here, point convincingly to the conclusion that Brumlow, as an employee of Ricoh, may enforce the arbitration clause against Meridian under either Fourth Circuit or New Jersey law. The uncontroverted record evidence discloses that Meridian's claims against Brumlow are based on his conduct as an agent of Ricoh.

Seeking to avoid this result, plaintiffs argue that Brumlow cannot show agency through his mere *ipse dixit*. But Brumlow has presented ample, undisputed evidence—including plaintiffs' counsel's emails—reflecting that plaintiffs are well-aware that Brumlow is not only a Ricoh employee, but that his relevant conduct in this case was on Ricoh's behalf. Here, the record clearly discloses that Meridian itself has recognized that Brumlow is a Ricoh employee. *See* Loder Supp. Decl. Ex. 1 (Letter from Counsel for Meridian to Ricoh) (representing Meridian's understanding that Brumlow was at relevant times a Major Accounts Sales Manager for Ricoh). Indeed, plaintiffs' claims against Ricoh—which claims are currently in arbitration—are predicated on the notion that Brumlow's actions are attributable to Ricoh. Moreover, plaintiffs' purported proof of Brumlow's (and Ricoh's) wrongdoing—three emails—demonstrate that Brumlow used a Ricoh-issued email address, Chris.Brumlow@ricoh-usa.com. *See* Compl. Exs. 11-13. Even Brumlow's email signature block reveals his employment at Ricoh, as it appears that Brumlow signed each message by noting his position, Major Accounts Sales Manager, as well as Ricoh's website and mailing address. *Id.* Thus, the unrefuted[18] evidence, including plaintiffs' own exhibits, confirms that Brumlow may enforce the arbitration clause against plaintiff Meridian.

---

[18] *See, e.g.*, *Nicosia*, 834 F.3d at 229 (noting that the legal standard on a motion to compel is similar to the summary judgment standard).

In opposition to this conclusion, plaintiffs rely on *dicta* from the Supreme Court's decision in *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013). In *American Express*, the Supreme Court held that a valid contractual waiver of class arbitration is enforceable even if the plaintiff's individual cost of arbitration exceeds her potential recovery. *See id.* In enforcing the arbitration clause, the Supreme Court also noted that "arbitration is a matter of contract," and that "courts must 'rigorously enforce' arbitration agreements according to their terms, including terms that 'specify *with whom* the parties choose to arbitrate their disputes[.]'" *Id.* at 2309 (alterations and citations omitted). Plaintiffs, however, read the Supreme Court's language—that a court must rigorously enforce terms specifying "with whom the parties choose to arbitrate"—as operating to overrule the well-settled principles that a nonsignatory may enforce and be subject to an arbitration clause. Plaintiffs' position is unpersuasive.

To begin with, plaintiffs' argument amounts to an attempt to read the Supreme Court's *dicta* to undermine its holding, namely, that the parties were compelled to arbitrate. Moreover, plaintiffs' narrow focus on *dicta* ignores the Supreme Court's emphasis that "arbitration is a matter of contract"—and it is undisputed that traditional contract law permits nonsignatories to enforce or be bound by contract terms. *See id.*; *Int'l Paper*, 206 F.3d at 416-17; *Jansen*, 776 A.2d at 820. At bottom, plaintiffs' interpretation of *American Express* would lead to the anomalous result that the Supreme Court, in upholding an arbitration clause, simultaneously (1) overturned by negative implication longstanding federal and state precedents permitting nonsignatories to compel (or be subjected to) arbitration clauses, and (2) thereby paved a path for adroit plaintiffs to "avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in [their] complaint[s]" and thus "nullif[y] ... the effect of the rule requiring arbitration[.]" *Arnold*, 920 F.2d at 1281. Had the Supreme Court, in enforcing an arbitration

clause, actually intended to unravel decades-old and unanimous case law favoring the enforcement of arbitration clauses, it would not have done so *sub rosa*.

In sum, Brumlow, a nonsignatory to the arbitration agreement, may nevertheless compel arbitration against Meridian, a signatory, because Meridian's claims against him are based on his conduct as an agent of Ricoh, another signatory.

## C.

Although it is clear that Brumlow may enforce the arbitration clause against Meridian, the question whether Brumlow, a nonsignatory, may bind Konica, *another* nonsignatory, requires wading through murkier waters. In this respect, the relationship between Konica and its subsidiary, Meridian, is less than pellucid.

To support his motion to compel arbitration against Konica, Brumlow argues that Konica is bound by the arbitration clause (1) because Konica is the whole owner of Meridian, a signatory to the arbitration clause, (2) because Konica's claims against Brumlow derive from Meridian's claims, and (3) because Brumlow is entitled to the same protection under the arbitration clause that his employer, Ricoh, enjoys. Importantly, however, none of these arguments focuses on the applicable legal principles. And those principles, applied here, point persuasively to the conclusion that Konica cannot be compelled to arbitrate its claims against Brumlow.

In addition to agency law, discussed *supra* Part IV.A-B, there are four other ways in which Konica could be bound to the arbitration clause, none of which applies here: (1) if Konica had entered a separate agreement with Ricoh incorporating by reference the existing arbitration clause; (2) if Konica had assumed the obligation to arbitrate; (3) if Meridian is simply an alter-ego of Konica; or (4) if Konica received a direct benefit from the Ricoh Agreement such that

17

Konica is appropriately estopped from avoiding arbitration. *See, e.g.*, *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 446 (3d Cir. 1999) (listing these factors as grounds to bind a nonsignatory to an arbitration clause); *Aggaro v. MOL Ship Mgmt. Co.*, 675 F.3d 355 (4th Cir. 2012) (similar).

Plaintiffs appear to rely solely on the concepts of agency and estoppel as grounds to compel Konica to arbitrate. But as to agency, there is no evidence in this record that Konica and Meridian—two separate corporate entities—have any sort of agency relationship besides the fact that Konica acquired Meridian well after Meridian entered the Ricoh Agreement. And, "[a]s a general matter, … a corporate relationship alone is not sufficient to bind a nonsignatory to an arbitration agreement." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 778 (2d Cir. 1995), *cited favorably in Bel-Ray*, 181 F.3d 435. Nor does the record support a finding that estoppel applies because Konica cannot be estopped from evading the arbitration clause unless Konica derived some "benefit" from the Ricoh Agreement. *See Thompson-CSF*, 64 F.3d at 779.[19] After all, as the Second Circuit held in *Thomson-CSF*, "a close relationship and intimate factual connection provide no *independent* basis to require a nonsignatory of an arbitration agreement to arbitrate with a signatory." 64 F.3d at 778-80 (emphasis added). Here, estoppel cannot apply, as Konica did not benefit from the Ricoh Agreement; rather, Ricoh terminated that

---

[19] Plaintiffs invoke a 2002 case, *Blumenthal-Kahn-Electric Ltd. v. American Home Assurance Co.*, for the proposition that an intimate factual connection is sufficient to compel arbitration. *See* 236 F. Supp. 2d 575 (E.D. Va. 2002). But plaintiffs' reliance on *Blumenthal* is misplaced, as that case undermines, rather than supports, their arguments. Specifically, plaintiffs argue that the factual similarity between Meridian's and Konica's claims against Brumlow is sufficient, noting that the *Blumenthal* court found it dispositive where the claims were "based on the same facts and [were] inherently inseparable …." *Blumenthal*, 236 F. Supp. 2d at 581. But in quoting this passage, plaintiffs overlook the facts (1) that *Blumenthal* also emphasized the equitable principle that the party to be bound must have benefited from the agreement containing the arbitration clause, and (2) that the parties seeking to avoid arbitration in that case had expressly incorporated arbitration clauses in their separate contracts. *Id.* at 582-83. Thus, *Blumenthal* does not dictate a finding here that Konica is compelled to arbitrate.

contract almost immediately after Konica acquired Meridian, presumably to *prevent* Konica from benefiting from the agreement.

In short, neither agency nor estoppel principles support Brumlow's motion to compel arbitration against Konica. And because there appears to be no sound basis for compelling Konica to arbitrate its claims against Brumlow, the motion to compel Konica to participate in arbitration must be denied.

**D.**

Although Konica may not be compelled to arbitrate against Brumlow, it is nevertheless appropriate to stay the proceedings between Konica and Brumlow precisely because the issues involved in Konica's claims against Brumlow are so closely intertwined with Meridian's claims.

Importantly, a district court may, in its discretion, stay the litigation of non-arbitrable claims—like those brought by Konica against Brumlow—if it is deemed necessary or advisable. *See Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir. 1992) ("The decision whether to stay the litigation of the non-arbitrable issues is a matter largely within the district court's discretion to control its docket."). And where, as here, "arbitrable and non-arbitrable issues are so intertwined that the resolution of the former directly impacts the resolution of the latter, a stay of the non-arbitrable issues pending completion of arbitration may be appropriate." *Singh v. Interactive Brokers LLC*, --- F. Supp. 3d ---, 2016 WL 7007791, at *9 (E.D. Va. 2016) (citing *Summer Rain*, 964 F.2d at 1461 (staying a non-arbitrable issue of what monies were owed because it required resolving an arbitrable issue of whether the defendants breached a contract)). Here, the issues that Meridian and Konica raised in the Complaint are closely related, and the binding arbitration may resolve some of the pending claims Konica has leveled against Brumlow. Moreover, collateral estoppel (issue preclusion) might apply. *See, e.g.*,

*Little Six Corp. v. United Mine Workers of Am., Local Union No. 8332*, 701 F.2d 26 (4th Cir. 1983) ("[N]umerous cases support the application of *res judicata* or collateral estoppel when the losing party in an arbitration proceeding seeks to reopen its case in federal court."). Thus, Konica's claims against Brumlow are appropriately stayed pending completion of the arbitration between Meridian and Brumlow.

V.

For the foregoing reasons, Brumlow's motion to dismiss pursuant to Rule 12(b)(3) must be denied, the motion to compel arbitration must be granted as against Meridian and denied as against Konica,[20] and the motion to stay proceedings pending arbitration must be granted with respect to Konica.

An appropriate Order will issue.

Alexandria, Virginia
April 25, 2017

/s/
_____
T. S. Ellis, III
United States District Judge

---

[20] During the course of oral argument, the parties agreed that if the motion to compel arbitration were granted, it would be appropriate to require Meridian and Brumlow to arbitrate their dispute in the existing arbitration between Meridian and Ricoh. This sensible suggestion will be reflected in the accompanying Order.